J. D. Lamison Drilling Co., Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued June 2, 1981, before President Judge CRUMLISH, JR. and Judges MENCER, BLATT, WILLIAMS, JR. and CRAIG.

*Lloyd R. Persun, Shearer, Mette & Woodside,* for petitioner.

*Paul S. Roeder,* Deputy Attorney General, for respondent.

OPINION BY PRESIDNT JUDGE CRUMLISH, JR., December 14, 1981:

J. D. Lamison Drilling Company, Inc. appeals from a Board of Finance and Revenue order which assessed a use tax deficiency against Lamison's business activities for the period from January 1, 1973 to September 30, 1976.[1] We affirm in part and reverse in part.

We adopt as our findings of fact in this de novo tax appeal the facts as stipulated by the parties. These

---

[1] The Board of Review assessed a tax deficiency of $5,612.56 plus $598.21 interest.

facts disclose that Lamison is in the business of water-well, blast hole and core hole drilling.[2] During the period in issue, Lamison was involved primarily in blast hole drilling for coal and limestone miners.[3]

Section 202(b) of the Tax Reform Code imposes a tax upon the use of tangible personal property and services purchased at retail, subject to certain exceptions not here applicable. Section 201(o)(4)(B) excludes from the definition of "use":

> The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor . . . in any of the operations of—
> (i) The manufacture of personal property. . . .

Section 201(c) defines "manufacture" as:

> The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired . . . and shall include, but not limited to—
> . . .
> (3) Refining, blasting, exploring, mining and quarrying for, or otherwise extracting from the earth . . . any natural resources, minerals and mineral aggregates. . . .

---

[2] The Commonwealth admits that Lamison's water-well drilling operations qualify as "mining" for the manufacturing exclusion from the Pennsylvania sales and use tax found in Sections 201(c) and 201 (c)(3) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §§7201(c) and 7201(c)(3). Such activities therefore are not at issue.

[3] In strip mining, "blast holes" are drilled into the soil, explosives are inserted therein and detonated to loosen the terrain covering underlying coal and limestone. "Core holes" are drilled into the soil to collect rock samples for analysis at existing and proposed mine sites. These samples are recorded and their depths noted.

Lamison contends first that, since its core hole and blast hole drilling activities were identical to those operations performed by coal and limestone miners using their own equipment, the parts and supplies used directly in the operation and maintenance of his drilling rigs and the razorback shovels used to clear the drill-hole area should be excluded from the tax. Secondly, Lamison contests the tax assessment and computed interest on parts and supplies for several registered pickup trucks used to transport employees and supplies to and from the drilling sites and work stations in the field.

The Commonwealth insists in reply that the manufacturing exclusion demands commercial *extraction* of a natural resource to qualify as "mining." Lamison merely drilled holes, did not himself extract coal or limestone from the earth, therefore he is not entitled to the mining exclusion.

In *Commonwealth v. The R. G. Johnson Co.,* Pa. , 433 A.2d 465 (1981), our Supreme Court held that a hard-rock extractor, who uses equipment to obtain access to bituminous coal, is involved in "manufacturing-mining" for the purpose of the use-tax exclusion. The Court reasoned that it is not the identity of the party who performs the work but the nature of the work done which controls the exclusion. That Johnson did not actually extract coal was not determinative.[4]

Applying *Johnson,* we conclude that Lamison is involved in "manufacturing" and is entitled to the tax

---

[4] The Supreme Court cited the administrative regulations of the Department of Revenue setting forth the criteria for determining whether property is "directly used" in the business of mining:

(1) *Direct use.* In determining whether property is directly used [in mining], consideration shall be given to the following factors:

(i) The physical proximity of the property in question to the production process in which it is used;

exclusion. As to its blast hole operations, Lamison is engaged in activity both physically and temporally proximate to the coal or limestone production process. There exists an "active causal relationship" between the use of Lamison's property and the mining of minarals in that Lamison creates the openings in the terrain into which the explosives are inserted and then detonated. This method of loosening the terrain in stripmining is intertwined with the extraction of the underlying coal or limestone.

As to its core hole drilling, Lamison is causally involved in "exploring" for minerals. This conclusion is consistent with 61 Pa. Code §32.1 which defines "exploring" as:

The examination and investigation of the earth . . . by drilling, digging, boring, sinking shafts or driving tunnels.

The Tax Reform Code does not limit the "exploring" exclusion, found in the definition of "manufacture," to the entity responsible for the final analysis of the extracted mineral sample. Although Lamison did not analyze the mineral sample, it performed the drilling, sampling, recording and logging of core samples. Absent these preliminary activities, there can be no labo-

---

(ii) The proximity of the time of use of the property in question to the production processes which precede and follow its use;

(iii) The active causal relationship between the use of the property in question and the production of the mined product. The fact that a particular property may be considered essential to the conduct of the business of mining because its use is required by law or practical necessity does not, of itself, mean that the property is used directly in mining operations. (Explanation added.)

61 Pa. Code §32.35(a)(1)(i-iii).

The Court in *Johnson* stressed the "active causal relationship" factor as the most persuasive in determining the application of the tax exclusion. *Johnson*, at    , 433 A.2d at 468.

ratory analysis, the ultimate step in the exploration process.

Focusing on the nature of the work performed rather than on the identification of the party performing the work, we conclude that the use of property employed in the collection of these samples is actively and causally related to "exploring ... for ... minerals. ..." as set out in Section 201(c)(3) of the Code. By making possible the exploration for, access to and extraction of coal and limestone, the use of equipment, including razorback shovels, employed by Lamison in its core hole and blast hole drilling operations, is involved in "manufacturing" and is thus excluded.

As to Lamison's contention that repair and replacement parts, services and supplies for its pickup trucks are excluded from the sales and use tax because its trucks are used predominantly in mining operation,[5] we hold it to be without merit.

Section 201(o)(4)(B) of the Code provides in part that:

> The exclusions provided in subparagraphs (i) ['manufacture' which includes mining and exploring] . . . shall not apply to any vehicle required to be registered under The Vehicle Code except vehicles directly used by a public utility engaged in the business as a common carrier.... (Explanation added.)

72 P.S. §7201(o)(4)(B).

Lamison asserts that this provision is limited to the *vehicles* themselves, and that repair and replacement parts, supplies and services for vehicles are exempted from taxation. Alternatively, Lamison argues that this provision is ambiguous.

---

[5] Lamison registered the pickup trucks under the Vehicle Code and paid sales tax on their purchases. The sales tax on the trucks is not at issue.

In interpreting statutes, our primary duty is to ascertain and effectuate the legislative intent. *Valley Forge Industries, Inc. v. Ormand Construction, Inc.,* 38 Pa. Commonwealth Ct. 603, 606, 394 A.2d 677, 678 (1978). Further, we must consider the consequences of a particular interpretation since it is presumed that the legislature did not intend an unreasonable result.

We conclude that the legislature did not intend that the exclusion apply to parts, supplies and services that are inextricably intertwined with the maintenance of the very vehicles that are subject to the tax. Therefore, repair and replacement parts, supplies and services for Lamison's pickup trucks are subject to the purchase and use tax.

Lamison's final claim is that interest on the alleged tax deficiency was improperly computed. Lamison was assessed a tax deficiency for an "understatement" of use tax liability under Section 231(b) of the Code, 72 P.S. §723(b). The Commonwealth assessed interest on the deficiency from the date the tax returns allegedly were required to be filed pursuant to Section 266 (c). Lamison, however, argues that Section 266(c) is not controlling because interest should be computed on the deficiency assessment pursuant to Section 265 of the Code.[6] Under this provision, interest on tax owed

---

[6] If any amount of tax imposed by this article is not paid to the department on or before the last date prescribed for payment, interest on such amount at the rate of three-fourths of one per cent per month for each month, or fraction thereof, from such date, shall be paid for the period from such last date to the date paid. The last date prescribed for payment shall be determined under subsection (a) or (c) of Section 222 without regard to any extension of time for payment. In the case of any amount assessed as a deficiency or as an estimated assessment, the date prescribed for payment shall be thirty days after notice of such assessment.

(72 P.S. §7265.)

is assessed from the "last day prescribed for payment," which, in the case of an assessment as a "deficiency," "shall be 30 days after notice of such assessment." Since the notice of assessment was January 10, 1977, Lamison contends that interest should be computed from February 9, 1977.

Prior to the June 16, 1976 amendment to the Tax Reform Code, Section 266(c) read as follows:

> Interest. If the Department assesses a tax according to subsection (a) or (c) of Section 231, there shall be added to the amount of the deficiency interest at the rate of ½ of 1% per month for each month, or fraction thereof, from the date prescribed by subsection (a) or (c) of Section 222 of this Article for the payment of the tax to the date of notice of the assessment.

Noticeably absent in the original provision was any reference to subsection *(b)* of Section 231 of the Code, the section under which Lamison was assessed a "tax deficiency due." In 1976 the General Assembly amended Section 266(c) to read, in its entirety, as follows:

> Interest. If the Department assesses a tax according to subsection (a), *(b)* or (c) of Section 231, there shall be added to the amount of the deficiency interest at the rate of ¾ of 1% per month for each month, or fraction thereof, from the date prescribed by subsection (a) or (c) of Section 222 of this Article for the payment of tax to the date of notice of the assessment.[7]
> (Emphasis added.)

72 P.S. §7266(c).

The Commonwealth argues that the legislature, in enacting the 1971 Code, inadvertently omitted from Section 266(c) the letter "(b)" when referring to Sec-

---

[7] Act of April 14, 1976, P.L. 112.

tion 231,[8] and that this oversight was corrected by the 1976 amendment of Section 266(c). Lamison, however, contends that, from the Tax Reform Code's enactment on March 4, 1971, until the amendment's effective date on June 15, 1976, there was no provision providing for interest in Section 231(b) assessments (for understatement of use tax liability) from the date when returns were required to be filed to the date 30 days after notice of assessment.

Since we must construe strictly all tax provisions,[9] we cannot inject into the pre-1976 legislation words which were not included by the legislature. In addition, we are bound to resolve all reasonable doubts in favor of the taxpayer. *Estate of Carlson,* 479 Pa. 421, 424, 388 A.2d 726, 728 (1978). Since the statute is clear, we will not disregard the letter of the law under the pretext of pursuing an unstated legislative intent. *Pittsburgh v. Roysten Services, Inc.,* 37 Pa. Commonwealth Ct. 394, 399, 390 A.2d 896, 898 (1978). Therefore, interest on the tax deficiency for the period from January 1, 1973 until June 14, 1976 must be computed under Section 265 of the Code, not Section 266(c). From June 15, 1976 through September 30, 1976, interest will be assessed under the amended section 266 (c).[10]

---

[8] The predecessor to Section 266(c) of the Tax Reform Code of 1971 was Section 571(c) of the Tax Act of 1963 for Education, Act of May 29, 1963, P.L. 49, 72 P.S. §3403-571(c), which stated, in pertinent part, that "If the department assesses a tax according to section 541(b) or (c) [predecessor legislation to subsections (b) and (c) of Section 231 of the 1971 Tax Reform Code] . . . ," interest would be computed on a deficiency from the date that the returns were required to be filed.

[9] Statutory Construction Act of 1972, 1 Pa. C. S. §1928(b)(3).

[10] The Commonwealth argues that the saving clause, found at Section 281.1 of the Tax Reform Code of 1971, operates to remedy the alleged inadvertent clerical error of omitting reference to subsection (b) of Section 231 in the original enactment of Section 266

From the foregoing, we conclude:

(1) The use of equipment and supplies, including razorback shovels, employed by Lamison in his core hole and blast hole drilling operations, is involved in "manufacturing" for the purpose of the use tax exclusion.

(2) The repair and replacement parts, supplies and services for Lamison's pickup trucks are subject to the purchase and use tax.

(3) Interest on the tax accrued from January 1, 1973 to June 14, 1976, shall be computed under Section 265 of the Tax Reform Code. Interest on this amount will run from February 9, 1977 (30 days after the notice of assessment).

Interest on the tax accrued from June 15, 1976 to September 30, 1976, shall be computed in accordance with Section 266(c), as amended in 1976.

Remanded to the Board of Finance and Revenue for proceedings consistent with this Opinion.

### ORDER

The Board of Finance and Revenue order dated November 14, 1977, Board Docket No. 70805, is hereby:

(1) Reversed as to the disputed tax liability in the amount of $5,456.72 assessed for the use of equipment, supplies and services, including razorback shovels, employed by Lamison in his core hole and blast hole drilling activities which herein constitute mining for the purpose of the use tax exclusion.

---

(c) of the Code. The Commonwealth's reliance, however, is misplaced. Section 281.1 is applicable "[t]o the extent that the language of Article II [of the Tax Reform Code of 1971] is identical to that of equivalent provisions in the Tax Act of 1963 for Education. . . ." Since reference to subsection (b) was not made in the 1971 provisions of Section 266(c) of the Code, the language is clearly not identical.

(2)   Affirmed as to the disputed use tax liability in the amount of $30.83 assessed to the repair and replacement parts, supplies and services for Lamison's pickup trucks.

(3)   Reversed as to the computed interest in the amount of $598.21 and remanded with directions to assess interest in accordance with this Opinion.

Remanded to the Board of Finance and Revenue for proceedings consistent with this Opinion. Unless exceptions are filed within thirty (30) days of the date hereof, judgment will be entered accordingly.